William E. BROCK, Plaintiff–Appellee,

v.

WENDELL'S WOODWORK, INC.;
Wendell Long; Herbert Long,
Defendants–Appellants.

William E. BROCK, Plaintiff–Appellee,

v.

McGEE BROTHERS CO.; Samuel A. McGee; Donald R. McGee; Michael R. McGee; R. Bill McGee; Cletus B. Huntley, Defendants–Appellants.

Nos. 88–2063, 88–2064.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 13, 1988.

Decided Feb. 7, 1989.

W. James Chandler (Haynes, Baucom, Chandler, Claytor, Benton & Morgan, Charlotte, N.C., on brief); Hunter C. Quick (Thomas A. McNeely, Leonard, McNeely, MacMillan & Durham, Charlotte, N.C., on brief) for defendants-appellants.

William J. Stone (George R. Salem, Sol.; Monica Gallagher, Associate Sol.; Linda Jan S. Pack, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

Invoking the free exercise clause of the First Amendment, the members of the Shiloh True Light Church of Christ, a separatist religious sect, and associated employers of their children claimed an exemption from the child labor laws in connection with the employment of children as young as nine and ten years old in a church devised apprentice training program. The question arose in a proceeding brought by the Secretary of Labor against a woodworking enterprise and a large masonry contractor, each of whom employed children under arrangements with the church. The district court upheld application of the statutory bans against child labor and the wage-hour provisions of federal law. The defendants have now conceded that the wage-hour provisions were properly applied by the court and that overtime and minimum wages were due, but they contend on appeal that the minimum age requirements could not be constitutionally applied to the employment of these children.

## I.

In the late nineteenth century, one Cunningham Boyle established a following that became a separatist religious sect. Members of the sect are now concentrated in the Shiloh True Light Church of Christ near Charlotte, North Carolina. Many of those members come from rural backgrounds with a minimum of formal education. They believe that they are constitutionally entitled to rear their children in relative freedom from worldly influences and in accordance with the parents' understanding of scriptural teaching.

About 1971, members of the church removed their children from the public schools. Since then the children of the church members have been taught at home by their parents. They believe that parental instruction is efficient and that half a day is quite sufficient for the teaching of the day's lessons. That left a full half day for other pursuits.

Many members of the church had supplemented their limited formal education through the service of apprenticeships. A program of vocational training was thought to insulate the children from idleness, to teach them marketable skills, to provide them with savings for the later launching of their own careers and to inculcate in them a scripturally mandated work ethic. Through employment by church members having the same religious motivation as the parents, a vocational training program was thought to teach the values of industry and hard work, and to provide training in a useful trade and savings that each child might use to advantage upon attaining adulthood.

Unlike the Old Order Amish, however, *see Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), members

of the True Light Church did not confine their vocational training program to preparation for life in an agrarian society. They enlisted the cooperation of church members operating commercial enterprises competing with other commercial enterprises in the modern world. This proceeding by the Secretary of Labor is against two of those enterprises, Wendell's Woodwork, Inc. and McGee Brothers Company, Inc.

Wendell's Woodwork manufactures wooden posts, stakes, industrial pallets and wedging materials. In its work it uses several varieties of power saws, and it employs forklift trucks in the handling of materials. Its controlling officers are members of the church. Children employed under the auspices of the church's vocational training program operate the power equipment.

McGee Brothers, with several hundred employees, is a large masonry contractor. The children employed by it are engaged in laying brick and cinderblock. They transport material and mix mortar. They sometimes work on scaffolds and, when chimneys are being constructed, on rooftops.

Four of the five owners of McGee Brothers are members of the church.

With each of these employers, some of the jobs are classified by the regulations as hazardous and not to be performed by any one under the age of eighteen. Of course, employment by either enterprise of children fourteen years old or under is absolutely prohibited. Nevertheless, the defendants contend that the free exercise rights of the church members made enforcement of any of these labor laws, with respect to their children, unconstitutional.

## II.

The Secretary filed a motion *in limine* to bar the introduction of evidence supporting the free exercise claim of the defendants. The motion was granted on the theory that enforcement of the labor laws was not barred by the religious rights of the church members.

The decision of the Supreme Court in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) is the only Supreme Court case dealing with the conflict of labor laws and free exercise rights.

In *Alamo* it appeared that a concededly eleemosynary enterprise derived much of its income from commercial activities. One of the principal purposes of the foundation was the rehabilitation of drug addicts, and it operated its commercial enterprises through former drug addicts. Those former addicts were called "associates", not "employees." The "associates" were not paid cash wages, but they received food, lodging and other necessities. The "associates" claimed to be working entirely as volunteers, and they disclaimed any interest in wages, although it appeared that many of them were dependent upon the Foundation for the provision of the necessities of life.

Notwithstanding the close association between the work and the commendable eleemosynary purposes of the Foundation, the Supreme Court held that the provisions of the wage-hour laws were constitutionally applicable to the employment and the work of the "associates." The Court found that the required wage and hour recordkeeping was not a burden on the religious interest, and that the government's interest in enforcing these provisions was compelling. In general, then, we must compare the burden on the asserted religious interest with the strength of the asserted governmental interest.

From the evidence and the proffered proof, it is clear that the members of the True Light Church are sincerely convinced that they are rearing their children in a manner dictated by their religious beliefs. They sincerely believe that vocational training has spiritual as well as secular worth. There is nothing in the federal statutes, however, that prevents church members from arranging for some instruction of their children in vocational pursuits.

When the means adopted to serve that end consist of employing children in commercial enterprises that compete with other enterprises fully subject to the labor laws, however, the religious beliefs of the church

members cannot immunize the employers from enforcement of the federal statutes. From the history of the industrial revolution in England and in this country, it is apparent that the United States has a substantial interest in regulating child labor, even to the point of prohibition. *See Prince v. Massachusetts,* 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944) (child employment particularly appropriate area for state to exercise broad authority). The sectarian purposes of the church members may be served by other means, but their service cannot be sought by putting children to productive work at power saw tables and on brick masons' scaffolding, in violation of the nation's labor laws. Were we confronted merely with violations involving older children or merely with excess hours in non-hazardous environments, this might have been a different case. In the case before us, however, the interest of the United States in prohibiting the employment of children in industrial environments must prevail.

Additionally, we may not ignore the interest of competing employers who comply with the relevant labor laws and feel the need to be free from competition with employers who do not comply.

It is no answer to this concern that the church members now concede that minimum wages should have been paid to the children. There is nothing to indicate that competing employers employ experienced adults at minimum entry level wages.

In short, the interest of the United States in the even-handed application and enforcement of its labor laws must prevail over the interest of church members who attempt to transport a vocational training program into industrial and commercial environments where children, save for their ages, are indistinguishable from other employees.

### III.

The district court properly concluded in this case, that enforcement of these labor laws may not be defeated by a claim by church members of free exercise rights under the First Amendment.

AFFIRMED.